### HARRIS v. HENRY.
Patent Appeal No. 3060.

Court of Customs and Patent Appeals.
Feb. 20, 1933.

Kwis, Hudson & Kent, of Cleveland, Ohio (B. M. Kent, of Cleveland, Ohio, and Watts T. Estabrook, of Washington, D. C., of counsel), for appellant.

Brown, Jackson, Boettcher & Dienner, of Chicago, Ill. (Arthur H. Boettcher and Charles V. Hildebrecht, both of Chicago, Ill., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an interference proceeding in which the question for determination is the ancillary one of the right of Henry to make the claims which constitute the counts in issue.

The invention relates, generally, to spring shackles, or pivotal connections, particularly for automobile springs; their most common use being in connecting the ends of automobile springs to the frame.

The issues here are narrow, being limited to certain structural features affecting the use, in the shackles, of elastic bushings which, by reason of their yieldability, respond to the movements of the metal parts where the spring is joined to the frame, and thus serve useful purposes, such as eliminating rattle, lessening wear, and avoiding the necessity for lubrication.

Henry is a patentee, patent No. 1,692,837, entitled "Oilless Spring Shackle," having been issued to him November 27, 1928, upon an application, serial No. 81,384, filed January 15, 1926, and renewed September 6, 1928.

At the time of the issuance of the patent to Henry, Harris had pending in the Patent Office an application, serial No. 39,970, filed June 27, 1925, for patent entitled "Pivotal Connections."

Harris copied a number of claims from the Henry patent for the purpose of interference; interference upon four counts was duly declared; Henry moved to dissolve on the ground that Harris was not entitled to make the counts; the motion was disallowed as to all the counts, and judgment on the record was entered against Henry by the Examiner of Interferences; appeal was taken to the Board of Appeals of the United States Patent Office, and the Board affirmed the decision of the Examiner as to count 3, but reversed it as to counts 1, 2, and 4, awarding priority upon them to Henry.

Harris has appealed to this court as to

counts 1, 2, and 4. Henry took no appeal. The only counts upon which we are called to pass, therefore, are as follows:

"1. A connection of the type described comprising a member having a cylindrical bearing, a connecting member, a bolt extending through said bearing and supporting said connecting member, an elastic tubular bushing interposed between said bolt and said bearing, said bushing having a substantially frusto-conical head at its outer end adapted to fit in a recess in said connecting member, and means coacting with said bolt to draw said connecting member toward the adjacent end of the bearing.

"2. A connection of the type described comprising a member having a cylindrical bearing, a two part bushing composed of elastic tubular members fitted in the opposite end portions of said bearing with their inner ends abutting against each other, said bushing members having substantially frusto-conical heads at their outer ends, a bolt extending through the bushing, connecting members supported by the end portions of the bolt and having recesses in their inner faces adapted to fit upon said heads, and means coacting with said bolt to draw said connecting members toward each other."

"4. A bushing composed of elastic material and comprising a tubular body portion having a substantially frusto-conical head at one end thereof, and a fillet at the juncture of said head and body portion."

Among the elements mentioned in count 1, supra, are "a connecting member" and "an elastic tubular bushing * * * having a substantially frusto-conical head at its outer end *adapted to fit in a recess in said connecting member.*" We have italicized the particular feature which appears to constitute the issue as to this count. Harris seems to disclose a tubular bushing with frusto-conical head, but the question is whether it is adapted to fit in a recess in the connection.

As to count 2, the question is quite similar, but the terms of the count necessitate its being stated somewhat differently. A fair statement of it seems to us to be, Do the "connecting members," called for by the count, have "recesses in their inner faces adapted to fit" upon the frusto-conical head, as the count requires?

One argument as to counts 1 and 2 is made by appellant, based upon the following state of facts:

It was stipulated by counsel for the respective parties that "either party may refer to the contents of the Transcript of Record in Appeal No. 2899 [heard by this court at its October, 1931, term, the case being decided by us April 4, 1932, 56 F.(2d) 864, 19 C. C. P. A. 1092], * * * as if said contents were included in the Transcript of Record in the instant case." That case was between the same parties who are here litigating. In it there was involved an earlier application of Henry, serial No. 44,231, filed July 17, 1925, which is referred to in the specification of his patent here, in part, at issue, with the statement that it is proposed to improve upon the construction of the said earlier application "in various respects." The same Harris application was involved there which is involved here.

The decision in that case was favorable to Harris, and Harris now insists that certain counts there involved were so analogous to counts 1 and 2 of the present case as that the decision there constitutes the "law of the case" applicable (as to counts 1 and 2) here.

We are unable to agree with this contention. No construction of the counts in that case was made by this court which is here applicable. While this case is between the same parties and relates to a part of a spring shackle or pivotal connection, it must be remembered that Henry's patent here involved shows claimed improvements over the application which was involved in the former case, and that the patent was granted, notwithstanding the pendency, at the time, of said application and its involvement in the interference there decided. So far as this controversy is concerned, it must be presumed that the counts now at issue are patentably different from the counts of Henry's prior application which were involved there.

The Examiner of Interferences held:

"It is plainly disclosed by Harris that the bushing head 40 is frusto-conical in shape as called for by the count and also that this head registers with a tapered recess in plate 41 and the plate 41 can reasonably be considered a part of the connecting member *although it is not integral therewith,* which meets the terms of the count." (Italics ours.)

The Board said:

" * * * The claims * * * literally construed, are broad enough to read on the Harris device, except that the recess is not in the connecting member 38 but in a separating [separate] member 41."

The Board said further:

"The original specification of Harris does

not mention the recess 41 in which the frusto-conical head 40 is seated, nor specify any function therefor. In our opinion it has no such function as that clearly ascribed to it in the Henry patent, and the invention is not disclosed by Harris. The issue should not be so broadly construed as to take away the invention disclosed and claimed in the Henry patent when the counts [courts] would not hold the Harris structure an infringement of the claims of the patent."

We are of the opinion that the conclusion reached by the Board of Appeals as to claims 1 and 2 is correct. We recognize the distinction between the rule which is applied by the courts in infringement suits and that which is applicable in interference cases. It is true, of course, that in interference proceedings counts are to be construed as broadly as their language will reasonably admit, but in applying this rule the word "reasonably" should not be deleted, and express limitations may not be disregarded. These principles are so familiar as to require no citation of authorities.

Equally as well settled is the rule that, if there be any ambiguity in counts of an interference, their meaning is to be determined by the specification of the application or patent in which the claims originated.

Henry has a definitely stated purpose for his distinctly defined "recesses" in the "connecting members." The connecting members in which these recesses appear are certain links which connect the spring ends with the frame. In Harris there are links which connect the spring ends with the frame, but what are claimed to be the recesses in Harris are not in his links, but are in plates "arranged at the ends of the bushings," which plates are between the bushings and the links. Structurally these plates differ from Henry's links. Henry's links are obviously designed to create recesses in which to seat the frusto-conical headed bushings.

The plates of Harris are not designed for any such purpose. The function ascribed to them in the Harris specification is to carry a certain pintle. The inner sides of the plates show, in the Harris drawings, a straight lined surface between the flanges on their respective ends, and the specification of Harris ascribes no function to a recess. Indeed, it makes no reference to a recess by that name or by any name, and the structure of Harris does not create any recesses which can function as do the recesses of Henry.

Much that was said in the case of Slattery v. Larner, 36 F.(2d) 298, 17 C. C. P. A. 725, is in point in the case at bar, and, when the facts in the case of Hartog v. Long et al., 47 F.(2d) 365, 18 C. C. P. A. 993, cited by appellant, are properly understood, there is nothing inconsistent in the two decisions.

Of count 4, supra, which is for the bushing therein described, the Board of Appeals said:

"As to count 4 there is no disclosure by Harris, in his specification, of the fillet which is specified in this claim. If it is held to be shown in his drawing, it is so doubtful that it is very likely to have been accidental."

This, too, we think is correct. We are unable to regard the slight shading shown in the Harris drawing as being a fillet such as Henry calls for and clearly defines.

Appellant, in his brief, suggests that "the action of the Board in awarding priority to Henry raises a question as to the propriety of such award on the present record," and argues that the Board of Appeals should merely have ordered a dissolution of the interference.

This question was not presented to the Board of Appeals, but, so far as the record discloses, is raised for the first time in the brief filed in this court.

This being the state of the pleadings, the question so raised does not seem to be before us in a form that it properly may be considered by us. It seems not improper to suggest, however, that, unless the question of priority be involved, this court would have no jurisdiction to entertain the appeal, since, in an interference proceeding, priority is our sole concern.

The decision of the Board of Appeals is affirmed.

Affirmed.