# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 1, 2011      Decided December 13, 2011

No. 10-5421

RHONDA N. BAIRD,
APPELLANT

v.

JOSHUA GOTBAUM, DIRECTOR,
PENSION BENEFIT GUARANTY CORPORATION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-01091)

*Rhonda Baird*, appearing pro se, argued the cause and filed the briefs for appellant.

*Michelle Lo*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: ROGERS and GARLAND, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: Appellant Rhonda N. Baird, an African-American female attorney in the Office of the Chief Counsel of the Pension Benefit Guaranty Corporation ("PBGC"), filed suit in district court against the PBGC, claiming employment discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e. The district court dismissed all her claims under FED. R. CIV. P. 12(b)(6). *Baird v. Snowbarger*, 744 F. Supp. 2d 279 (D.D.C. 2010). We discuss only those that she appeals. They fall into two categories: *first*, claims of race and gender discrimination (Counts III and V), and of unlawful retaliation (Count I), arising out of four discrete episodes; *second*, a claim of a retaliatory hostile work environment (Count II) arising not only out of the four discrete episodes but also out of various other events as to which she raised claims that were time-barred (apart from their potential role in her hostile environment claim).

As always, of course, the allegations of plaintiff's complaint are presumed true, and all reasonable factual inferences must be drawn in her favor. *Maljack Prods., Inc. v. Motion Picture Ass'n of Am.*, 52 F.3d 373, 375 (D.C. Cir. 1995). To the extent that the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), may qualify these principles, the qualifications are not pertinent to the issues immediately before us.

We affirm the district court's dismissal of the claims that rely on the four discrete episodes standing alone but vacate and remand as to the claim of retaliatory hostile work environment.

\* \* \*

*Discrete episodes claims*. The four discrete episodes are the following: (1) In a dispute within the PBGC over the agency's scan of its email system, some fellow workers circulated emails calling Baird "psychotic." (2) The Human Resources Department singled out Baird in securing her signature acknowledging receipt of an email-related office memorandum. (3) PBGC litigation counsel Raymond Forster sent an email to several employees advising "the 11th floor OGC [Office of General Counsel] staff in the area of conference room 11E to use caution about what they say in halls or open offices," for "[c]ertain people who will be in 11E have a way of twisting and publicizing their litigation induced hallucinations." (4) One Ruben Moreno had shouted and pounded the table at Baird while she deposed him during a proceeding involving Equal Employment Opportunity complaints. See *Baird*, 744 F. Supp. 2d at 283-85.

In dismissing the claims arising out of these events, the district court relied on the absence of "an adverse employment action." See, e.g., *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002). For discrimination claims, an action must, to qualify, be "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009). An employee must "experience[] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Id*. In the retaliation context the "adverse action" concept has a broader meaning. There, actions giving rise to claims are "not limited to discriminatory actions that affect the terms and conditions of employment," *Burlington N. & Santa Fe Ry. Co. v. White*, 548

U.S. 53, 64 (2006), but reach any harm that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," *id*. at 68. See *Baird*, 744 F. Supp. 2d at 290-91, 292. The district court found that Baird's allegations fell short of these threshold requirements, as to both discrimination and retaliation.

Plaintiff's claims here are relatively unusual in that she does not assert that discriminatory intention brought about the underlying acts (what we've called the discrete episodes), and even as to retaliation she soft-pedals her claim of retaliatory intent. Rather, she argues that such discriminatory and retaliatory intent caused the PBGC's failure to respond to her complaints about them and to take corrective action against the employees who, as she sees it, had traduced or abused her. Thus the case is in important respects like *Rochon v. Gonzales*, 438 F.3d 1211 (D.C. Cir. 2006), where the plaintiff (an FBI agent) alleged that the FBI had received credible death threats against himself and his wife, made by an inmate in a federal prison, and that the FBI, out of discriminatory and retaliatory motives, had failed to investigate or take any steps to protect him. *Id*. at 1213-14. There was no suggestion that the FBI was responsible for the threatening inmate's behavior, but (focusing on the retaliation) we found that allegations of an unlawfully motivated failure to investigate the threat or to protect the Rochons were sufficient to survive a motion under Rule 12(b)(6). *Id*. at 1219-20.

Of course death threats are extreme, but we think the *Rochon* principle may be generalized, though slightly differently with respect to discrimination and retaliation. Stated in a form most favorable to plaintiff, a claim of discriminatory or retaliatory failure to remediate may be sufficient if the uncorrected action would (if it were discriminatory or retaliatory) be of enough significance to qualify as an adverse action (under the relevant standard).

As to discrimination, the district court concluded that, even if unlawfully motivated, the actions taken by the PBGC would not rise to the level of "adverse employment actions," because they "would not effect a 'significant change' in *plaintiff's* employment status," *Baird*, 744 F. Supp. 2d at 291 (emphasis in original), and "[did] not rise to the level of objectively tangible harm," *id*. We agree. Indeed, each of the four discrete episodes seems (at worst) akin to the sort of "public humiliation or loss of reputation" that we have consistently classified as falling below the requirements for an adverse employment action. We found in *Stewart v. Evans*, 275 F.3d 1126, 1135-36 (D.C. Cir. 2002), for instance, that in the absence of accompanying effects on salary or other elements of employment status, plaintiff's claim that supervisors "intentionally and perfidiously created the appearance that the plaintiff and her staff were involved in violations of court orders and obstruction of justice" did not amount to an adverse employment action. See also, e.g., *Taylor v. Small*, 350 F.3d 1286, 1292-93 (D.C. Cir. 2003) (supervisor's delays in completing plaintiff's performance evaluations and placement of plaintiff on Performance Improvement Plan were not adverse employment actions).

Baird seeks to take the case out of the class of garden-variety workplace tension by pointing to the PBGC's Workplace Rules, which provide not only a code of civility among employees but also mechanisms for remediation of breaches. She argues passionately that the Rules are among the "terms, conditions, or privileges of employment" with respect to which Title VII affords protection, see 42 U.S.C. § 2000e-2(a)(1), evidently supposing that anything in that category ipso facto meets the adverse action test for unlawful discrimination. But "not everything that makes an employee unhappy is an actionable adverse action," *Douglas*, 559 F.3d at 552, and the many workplace slights that we have in other cases found to fall below the requisite threshold all related to

conditions of employment. Although necessary for her discrimination claims, merely being such a condition in itself is plainly not sufficient.

In a slight variation of this argument Baird points to *Hishon v. King & Spalding*, 467 U.S. 69 (1984), where the Court held sufficient to withstand dismissal plaintiff's allegations that a law firm discriminatorily breached its contractual promise to consider an associate for partnership. Because the firm's promise was a "term" or "condition" of the associate's employment, indeed "a key contractual provision which induced [the plaintiff] to accept employment," *id*. at 74-75, it was no defense for the firm to say that *admission to partnership* was not itself a term or condition of employment. *Id*. at 73-78. Baird of course does not face the technical obstacle that Hishon did—that of demonstrating the existence of any employment-related benefit in the first place; the behavior of which she complains indubitably had the requisite relation to employment for purposes of coverage by Title VII. But that is of no help to her in meeting the adverse action test, as the slights to which she objects are hardly in the same category as failing to consider one for advancement to partnership.

Baird's retaliation claims arising from the four discrete episodes differ from her discrimination claims only in that the concept of adverse action is somewhat broader and in that *Rochon* is directly applicable. The district court found that none of the acts, or the failure to remedy them, was sufficient under the controlling standard. *Baird*, 744 F. Supp. 2d at 293, 294. Again, we agree. We do not believe that the PBGC's failure to remedy the various critiques and epithets to which Baird's fellow employees subjected her would have persuaded a reasonable employee to refrain from making or supporting charges of discrimination. See *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) ("sporadic verbal

altercations or disagreements do not qualify as adverse actions for purposes of retaliation claims").

Accordingly, as to all four discrete episodes, we affirm the district court's dismissal of Baird's claims of race and gender discrimination and of unlawful retaliation.

*Retaliatory hostile work environment*. To prevail on a hostile work environment claim, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). We have previously found that "a hostile work environment can amount to retaliation under Title VII" if the conduct meets that standard. See *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006); see also *Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir. 2003). In evaluating Baird's retaliatory hostile work environment claim, the district court analyzed the four discrete episodes and concluded that Baird "[could not] satisfy [the *Harris*] test, because none of the acts that she alleges, whether considered alone or cumulatively, meets 'the demanding standards' for a hostile work environment claim." *Baird*, 744 F. Supp. 2d at 295 (quoting *Sewell v. Chao*, 532 F. Supp. 2d 126, 141-42 (D.D.C. 2008)).

Baird argues on appeal that the district court erred in excluding two categories of acts from her hostile work environment claim: (1) actions as to which she filed complaints with the Equal Employment Opportunity Commission but which were time-barred, and (2) the underlying conduct that the PBGC allegedly failed to investigate and remedy. We discuss each in turn.

(1) Time-barred acts. As we explained in *Singletary v. District of Columbia*, the Supreme Court has made clear that "'discrete discriminatory acts' . . . 'are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'" 351 F.3d at 526 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). "But '[h]ostile environment claims . . . are different in kind from discrete acts' because '[t]heir very nature involves repeated conduct.'" *Id.* (alterations in original) (quoting *Morgan*, 536 U.S. at 115). "Such a claim . . . 'is comprised of a series of separate acts that collectively constitute one unlawful employment practice,'" and accordingly "are subject to a different limitations rule . . . . 'Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" *Id*. at 526-27 (quoting *Morgan*, 536 U.S. at 117).

The *Morgan* principle is not, however, an open sesame to recovery for time-barred violations. Both incidents barred by the statute of limitations and ones not barred can qualify as "part of the same actionable hostile environment claim" only if they are adequately linked into a coherent hostile environment claim—if, for example, they "involve[] the same type of employment actions, occur[] relatively frequently, and [are] perpetrated by the same managers." *Morgan*, 536 U.S. at 120-21. See also *id*. at 118 (excluding any incident that "had no relation to the [other] acts . . . or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim"); *Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 951 (8th Cir. 2011) ("[A]cts before and after the limitations period [that are] *so similar in nature, frequency, and severity . . .* must be considered to be part and parcel of the hostile work environment . . . ." (alterations and emphasis in original)); *Wheaton v. N. Oakland Med. Ctr.*, 130 Fed. App'x 773, 787

(6th Cir. 2005) (*Morgan* requires inquiry into whether incidents "occurring outside the statutory period are *sufficiently related* to those incidents occurring within the statutory period as to form one continuous hostile work environment." (emphasis in original)). These formulations are at best only rather general, but neither the Supreme Court nor any circuit seems yet to have offered anything more illuminating.

Baird is clearly correct that the district court erred to the extent that it categorically excluded her time-barred complaints in considering the hostile work environment claim, thus failing to employ the *Morgan* analysis, including, of course, a determination of which acts exhibit the relationship necessary to be considered "part of the same actionable hostile environment claim."

(2) Underlying acts. Baird additionally argues that the district court erred in considering only the PBGC's alleged failures to investigate various Workplace Rules violations, and not the underlying, uninvestigated conduct itself (without conceding that the latter *must* have been retaliatory itself in order for her allegations to state a claim). See *Baird*, 744 F. Supp. 2d at 294. The district court did so because, in its view, Baird failed to "allege that this underlying behavior (as opposed to defendant's response to this behavior) was due to [her] race, sex, or activity protected under Title VII." *Id.* (citing *Franklin v. Potter*, 600 F. Supp. 2d 38, 76 (D.D.C. 2009); *Na'im v. Clinton*, 626 F. Supp. 2d 63, 73 (D.D.C. 2009)).

But allegations of retaliatory intent are plainly present at least as to some of the underlying acts. For example, the complaint very plainly attributes the emails suggesting psychosis to an intent to retaliate. First Amended Complaint ¶ 26. Moreover, the complaint's retaliatory environment

claim explicitly incorporates all prior allegations by reference, *id*. ¶ 66, and then says that "[t]he harassment and hostile work environment *including* PBGC's failure to take appropriate corrective action was so severe and/or pervasive that it altered the terms and conditions of Plaintiff's employment and created a very abusive atmosphere," *id*. ¶ 68 (emphasis added). Given that this whole count is directed entirely to retaliation, this language clearly asserts retaliatory purpose as to the underlying acts. We take no position as to the ultimate adequacy of the complaint under *Iqbal* and similar cases, but the categorical exclusion of the underlying acts was error.

Baird also raises a closely related argument. The district court suggested that a "plaintiff cannot rely on the discrete acts upon which she bases her discrimination and retaliation claims to support her hostile work environment claim." *Baird*, 744 F. Supp. 2d at 295; see also *id*. at 295-96 ("Because plaintiff's allegedly hostile events are the very employment actions she claims are retaliatory, she cannot so easily bootstrap allegedly retaliatory incidents into a broader hostile work environment claim." (quoting *Franklin*, 600 F. Supp. 2d at 76, with alterations)).

The district court and the cases on which it relies are correct to the extent they simply mean that acts giving rise to a hostile work environment claim must collectively meet the independent requirements of that claim (i.e., be "sufficiently severe or pervasive . . . ," *Harris*, 510 U.S. at 21), and must be adequately connected to each other (i.e., "all acts which constitute the claim are part of the same unlawful employment practice," *Morgan*, 536 U.S. at 122), as opposed to being an array of unrelated discriminatory or retaliatory acts. But we find no authority for the idea that particular acts cannot as a matter of law simultaneously support different types of Title VII claims, and of course, plaintiffs are free to plead alternative theories of harm that might stem from the same

allegedly harmful conduct. Thus, although a plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard, neither can a court dismiss a hostile work environment claim merely because it contains discrete acts that the plaintiff claims (correctly or incorrectly) are actionable on their own.

In this connection, finally, we note an argument of the PBGC, invoking a footnote in the district court's opinion, that "Baird '[did] not attempt to segregate those events she claims constitute a hostile work environment from discrete acts of discrimination and/or retaliation.'" Appellee's Br. 42 (quoting *Baird*, 744 F. Supp. 2d at 294 n.10). Although absence of segregation in the complaint doubtless complicates the court's task, the complication can presumably be cured by insistence on suitably targeted briefing, and is not an independent ground for excluding time-barred claims from the hostile work environment analysis under Rule 12(b)(6).

We therefore vacate the district court's dismissal of Baird's retaliatory hostile work environment claim and remand for a determination of which, if any, acts should have been included under *Morgan* (and of course whether those acts satisfy *Morgan*). We express no opinion on whether the PBGC's motion to dismiss is ultimately meritorious or whether further proceedings involving discovery, etc., are appropriate.

* * *

For the foregoing reasons, we conclude that the district court correctly dismissed for failure to state a claim all the specific-act claims of discrimination and retaliation (Counts I, III, and V). As to the claim of retaliatory hostile work environment (Count II), we find that the district court

incorrectly excluded from its analysis acts by the PBGC that may have supported the claim. The judgment of the district court is therefore affirmed in part, vacated in part, and remanded.

*So ordered.*