# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 14, 2015        Decided July 7, 2015

No. 12-5334

RHONDA N. BAIRD,
APPELLANT

v.

JOSHUA GOTBAUM, DIRECTOR, PENSION BENEFIT GUARANTY
CORPORATION,
APPELLEE

Consolidated with 13-5156

Appeals from the United States District Court
for the District of Columbia
(No. 1:09-cv-01091)
(No. 1:11-cv-00669)

*Rhonda N. Baird*, *pro se*, argued the cause and filed briefs for the appellant.

*Jane M. Lyons*, Assistant United States Attorney, argued the cause for the appellee. *Ronald C. Machen Jr.*, United States Attorney, and *R. Craig Lawrence* and *Alexander D. Shoaibi*, Assistant United States Attorneys, were with her on brief.

Before: HENDERSON, *Circuit Judge*, and WILLIAMS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Rhonda Baird is a lawyer for the Pension Benefit Guarantee Corporation (PBGC). She is the former president of the employees' union and a frequent filer of Title VII claims on behalf of herself and others. Baird claims that, in retaliation for her Title VII activities, the PBGC made her work environment a hostile one. Her two complaints recount several instances of rude emails, name-calling, lost tempers and unprofessional behavior—all of which the PBGC failed to investigate or remediate. Although Baird paints an unpleasant picture, she does not allege that the PBGC has done anything *illegal*. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("Title VII . . . does not set forth a general civility code for the American workplace." (quotation marks omitted)). We therefore affirm the dismissal of her two complaints.

## I.

Title VII prohibits a federal employer from discriminating against an employee based on his race, sex, religion or nationality. 42 U.S.C. § 2000e–16(a). It also contains an anti-retaliation provision, barring an employer from taking an adverse action against an employee "because he has opposed any practice made unlawful by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [Title VII]."

*Id.* § 2000e–3(a).[1] To prove retaliation, a plaintiff must show that "(1) [he] engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." *Hairston v. Vance-Cooks*, 773 F.3d 266, 275 (D.C. Cir. 2014). An adverse action must be "material"—*i.e.*, "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68, 57.

We have recognized a special type of retaliation claim based on a "hostile work environment." *See Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006). A hostile environment consists of several individual acts that "may not be actionable on [their] own" but become actionable due to their "cumulative effect." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). The constituent acts must be "adequately linked" such that they form "a coherent hostile environment claim." *Baird v. Gotbaum (Baird I)*, 662 F.3d 1246, 1251 (D.C. Cir. 2011). For example, they might "involve the same type of employment actions, occur relatively frequently, and [be] perpetrated by the same managers." *Id.* (alterations omitted). In addition, the acts must be "of such severity or pervasiveness as to alter the conditions of . . . employment and create an abusive working environment." *Hussain*, 435 F.3d at 366 (quotation marks and alterations omitted). Severity and pervasiveness are determined by reference to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

---

[1] The anti-retaliation provision applies to the PBGC by virtue of 42 U.S.C. § 2000e–16. *See Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009).

employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The standard is an objective one. *Id.* at 21.

## II.

This consolidated appeal is the culmination of six years of litigation involving two complaints, four district court decisions, an appeal and a remand. Below, we outline the facts and procedural history behind each appeal.[2]

### A. No. 12-5334

Baird filed her first amended complaint in February 2010. In it, she alleged Title VII claims based on various run-ins with her coworkers between 2002 and 2009. In November 2002, for example, John Paliga verbally assaulted Baird and advanced ominously into her office. In Spring 2005, Dwayne Jeffers sent an email calling Baird "psychotic" and, in January 2007, Raymond Forster circulated an email suggesting she experienced "litigation induced hallucinations." Baird was falsely accused by Richard Lattimer and another human resources officer of disseminating anonymous flyers in June 2005. In January 2006, Baird was temporarily blocked from sending emails to Jeffers and Robert Perry. Baird learned in November 2006 that Jeffers had sent an arbitration file containing her confidential information to a private lawyer. In Summer 2008, Scott Schwartz said that someone should "overthrow" Baird as union president and then falsely accused her of violating her ethical duties. In November 2008, Robert Moreno falsely accused Baird of spreading rumors and, in

---

[2] All facts come from Baird's two complaints. Reviewing a motion to dismiss, "[w]e accept [her] factual allegations . . . as true and we draw all inferences in her favor." *Brown v. Sessoms*, 774 F.3d 1016, 1020 (D.C. Cir. 2014) (quotation marks omitted).

February 2009, he yelled at her during a deposition. In September 2009, Michael O'Connell falsely accused Baird of sending a harassing email. That same month, Gilbert Martinez cut Baird out of certain work communications, stormed out of a meeting and refused to complete his work on time. Baird formally complained to the PBGC's human resources department about many of these incidents but it failed to investigate them. According to Baird, these actions constituted discrimination, retaliation and a hostile work environment.

The PBGC moved to dismiss Baird's complaint, which motion the district court granted *in toto*. *See* 744 F. Supp. 2d 279, 296 (D.D.C. 2010). We affirmed in part and reversed in part. *Baird I*, 662 F.3d at 1253. We agreed that Baird failed to state a stand-alone claim of discrimination or retaliation because the incidents she identified were not materially adverse. *See id.* at 1249–50. We characterized Baird's allegations as "slights"—"the sort of 'public humiliation or loss of reputation' that we have consistently classified as falling below the requirements for an adverse employment action." *Id.* As for her retaliatory hostile-work-environment claim, we reversed the district court on two points of law. First, the district court dismissed many of Baird's allegations as untimely without first applying the special rules that govern hostile-work-environment claims. *Id.* at 1251. *See generally Morgan*, 536 U.S. at 117–20 (hostile-work-environment claims are timely if constituent acts are adequately connected and at least one falls within filing period). Second, the district court held that the incidents supporting Baird's stand-alone claims could not *also* support her hostile-work-environment claim. *Baird I*, 662 F.3d at 1252–53. We disagreed, noting that "plaintiffs are free to plead alternative theories of harm that might stem from the same allegedly harmful conduct." *Id.* at 1252. Based on these legal errors, we remanded Baird's

retaliatory hostile-work-environment claim to the district court. *Id.* at 1253. But we expressed "no opinion" on whether the claim would ultimately survive a Rule 12(b)(6) motion. *Id.*

On remand, the PBGC again moved to dismiss and the district court again granted it. *See* 888 F. Supp. 2d 63, 78 (D.D.C. 2012). The court concluded that Baird's allegations, taken together, did not sufficiently allege a retaliatory hostile work environment. *Id.* at 73. Baird timely appealed.

**B. No. 13-5156**

In April 2011—before we issued our decision on appeal—Baird filed a second complaint, which was assigned to a different district judge. The complaint rehashed all of the allegations from Baird's first complaint and added several new ones. Specifically, in February 2010, Schwartz falsely claimed that a federal judge had referred to Baird as a "cancer" and then verbally assaulted her while pounding his fists on a table. In September and October 2010, the PBGC refused to settle a matter with Baird and refused to honor an earlier arbitral award. Around the same time, Martinez engaged in "hostilities" toward Baird. As before, Baird reported these incidents to the PBGC's human resources department and it failed to investigate or remediate them. Baird's second complaint, like her first, alleged discrimination, retaliation and a hostile work environment. But once we issued our decision in *Baird I*, Baird voluntarily dropped all claims except the retaliatory hostile-work-environment claim.

In the meantime, the district judge in Baird's first suit issued her remand decision. This prompted the judge in Baird's second suit to dismiss a large swath of the allegations therein. *See* Order at 11, No. 1:11-cv-00669 (D.D.C. Jan. 3, 2013). He concluded that Baird was barred by issue

preclusion from relitigating the allegations his colleague had already considered and rejected. *Id.* at 7–8. At a subsequent hearing, he considered Baird's remaining allegations and dismissed them too for failure to state a retaliatory hostile-work-environment claim. Order at 11, No. 1:11-cv-00669 (D.D.C. May 17, 2013). Baird timely appealed. We consolidated the appeal from the dismissal in No. 13-5156 with the appeal from the remand decision in No. 12-5334.

## III.

Both of Baird's complaints are now before us and both allege a claim of retaliatory hostile work environment. The district judges dismissed many of Baird's allegations on timeliness and preclusion grounds. We commend that approach. Although non-jurisdictional, issue preclusion and timeliness are mandatory requirements that serve important purposes. *See N.Y. Shipping Ass'n, Inc. v. Fed. Mar. Comm'n*, 854 F.2d 1338, 1352 (D.C. Cir. 1988); *Mondy v. Sec'y of Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988). And despite Baird's best attempts, "a plaintiff has no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Zerilli v. Evening News Ass'n*, 628 F.2d 217, 222 (D.C. Cir. 1980) (quotation marks omitted). Nevertheless, as an appellate court, we can "affirm the District Court on any valid ground, and need not follow the same mode of analysis." *Molerio v. FBI*, 749 F.2d 815, 820 (D.C. Cir. 1984). We will therefore bypass the more difficult questions of timeliness and *res judicata* and consider instead whether Baird's two complaints, taken together, state a claim of retaliatory hostile work environment.

As noted, the constituent acts of a hostile-work-environment claim must be "adequately linked" to one another. *Baird I*, 662 F.3d at 1251. The intermittent spats identified in Baird's complaints, however—spanning eight years and involving different people doing different things in different contexts—have little to do with each other. *Cf. id.* Baird makes no serious attempt to tie them together. The one common thread she does identify is the repeated failure of the PBGC's human resources department to investigate or remediate her internal complaints.

This theory, however, suffers from a different problem. A retaliatory failure-to-remediate claim is not actionable unless the underlying incident would itself be actionable. *See id.* at 1249 ("a claim of . . . retaliatory failure to remediate may be sufficient if the uncorrected action would . . . be of enough significance to qualify as an adverse action"). In other words, if certain conduct would not "dissuade a reasonable worker from making or supporting a charge of discrimination," *Burlington N.*, 548 U.S. at 57, neither would an employer's failure to investigate that conduct. A trivial incident does not become nontrivial because an employer declines to look into it. Title VII is aimed at preventing discrimination, not auditing the responsiveness of human resources departments.

Here, the incidents the PBGC failed to remediate would not themselves constitute a retaliatory hostile work environment. We already considered many of them in *Baird I* and concluded they were immaterial "slights." 662 F.3d at 1250. Baird's other allegations are more of the same. They consist of occasional name-calling, rude emails, lost tempers and workplace disagreements—the kind of conduct courts frequently deem uncognizable under Title VII. *See Burlington N.*, 548 U.S. at 68 ("personality conflicts . . . are not actionable" under Title VII); *Brooks v. Grundmann*, 748 F.3d

1273, 1277–78 (D.C. Cir. 2014) ("the ordinary tribulations of the workplace, [*i.e.*,] a series of petty insults, vindictive behavior, and angry recriminations . . . are not actionable under Title VII" (quotation marks and citation omitted)); *id.* at 1277 ("isolated expression of frustration" where employee "yelled," "violently threw a book" and "slamm[ed] down his hand" did not support hostile-work-environment claim); *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) ("sporadic verbal altercations or disagreements do not qualify as adverse actions"); *Forkkio v. Powell*, 306 F.3d 1127, 1130–31 (D.C. Cir. 2002) ("public humiliation," "loss of reputation" and loss of prestige are not actionable). To borrow from *Baird I*, "[w]e do not believe that the PBGC's failure to remedy the various critiques and epithets to which Baird's fellow employees subjected her would have persuaded a reasonable employee to refrain from making or supporting charges of discrimination." 662 F.3d at 1250. The sheer volume of Baird's allegations does not change our conclusion: a long list of trivial incidents is no more a hostile work environment than a pile of feathers is a crushing weight.

Baird does not really argue to the contrary. Instead, she contends that the PBGC's conduct was actionable because it took a serious toll on her emotional and physical health. We, of course, assume this is true but the standard for severity and pervasiveness is nonetheless an *objective* one. *Harris*, 510 U.S. at 21. Given the objectively immaterial nature of her allegations, the fact that Baird suffered subjective harm is insufficient on its own. Baird further argues that the PBGC's failure to investigate her internal complaints is actionable because it violated the agency's own workplace rules. We already considered and rejected this argument in *Baird I*. *See* 662 F.3d at 1249–50.

10

Accordingly, we affirm the district courts' dismissals of Baird's complaints in Nos. 12-5334 and 13-5156.

*So ordered.*