Concurring opinion filed by Circuit Judge HENDERSON.
Concurring opinion filed by Circuit Judge KAVANAUGH.
Dissenting opinion filed by Circuit Judge ROGERS.
KAREN LECRAFT HENDERSON, Circuit Judge:
Plaintiff Samuel Ortiz-Diaz appeals from the grant of summary judgment in favor of defendant United States Department of Housing and Urban Development (HUD) in his discrimination lawsuit brought pursuant to 42 U.S.C. §§ 2000e et seq. The district court found that the action complained of — denial of Ortiz-Diaz’s requests for lateral transfers on the basis of race *490 and/or national origin — was not cognizable under Title VII because it did not constitute an “adverse employment action.” Ortiz-Diaz v. United States Dep’t of Housing and Urban Dev., 75 F.Supp.3d 561, 568 (D.D.C. 2014). We affirm.
I.
Ortiz-Diaz began his employment with HUD in April 1998 as a criminal investigator in San Juan, Puerto Rico. In 2000 he was reassigned to Hartford, Connecticut to be closer to his wife, who was employed in Albany, New York. In 2009 Ortiz-Diaz applied for and accepted a promotion to senior special agent, a GS-14 position, in HUD’s Office of Inspector General (OIG) in Washington, D.C. The promotion was approved by Assistant Inspector General for Investigations John McCarty.[1]
In July 2010 Ortiz-Diaz applied for an Assistant Special Agent in Charge (ASAC) position in New York City (NYC) but was not selected. McCarty made the decision and Ortiz-Diaz believed that he was not selected because he is Hispanic. See Ortiz-Diaz Decl. ¶ 11, J.A. 611 (“I was angry because I believed that McCarty was ... making improper personnel decisions based on race.”). He told a colleague he was not going to “take it quietly” and that he was gearing up for “a super heavyweight fight.” No “fight” ensued — apparently because Ortiz-Diaz subsequently learned that McCarty’s selectee was also Hispanic.
On September 30, 2010 Ortiz-Diaz accepted a GS-13 level position as a program analyst with HUD’s Office of Public and Indian Housing in Albany. Around this time McCarty, on learning that Ortiz-Diaz was seeking to leave OIG, asked the latter if he was interested in an ASAC vacancy in Chicago or, alternatively, a transfer to NYC at the GS-13 level. Instead of pursuing either option, in October 2010[2] Ortiz-Diaz requested a transfer to an investigative position in Albany or Hartford pursuant to HUD’s no-cost, voluntary transfer program. That program “allows investigators to request voluntary transfers to duty stations of their choice for reasons other than the specific staffing needs of the Agency,” Oritz-Diaz, 75 F.Supp.3d at 564, but the relocation is at the employee’s expense. In addition, the program does not guarantee that a request will be approved; instead, an employee is considered for transfer as a vacancy arises. McCarty denied the request on October 12, 2010, stating that HUD OIG maintained no investigative office in Albany and that there was no vacancy in Hartford. Ortiz-Diaz filed his complaint on May 4, 2012 alleging that his October 2010 request was denied because he is Hispanic. The district court granted summary judgment to HUD because “[a]b-sent extraordinary circumstances not present here, a purely lateral transfer does not amount to an adverse employment action” cognizable under Title VII. Id. at 565 (citing Medina v. Henderson, No. 98-5471, 1999 WL 325497 at *1 (D.C. Cir. Apr. 30, 1999)). The district court also found that a *491 transfer from the D.C. headquarters would have necessitated a downgrade to the GS-13 level, which itself may have constituted an “adverse employment action.” Id. at 565-66.[3] Finally, Ortiz-Diaz’s then-pending motion to compel was denied because “even if Mr. Ortiz-Diaz uncovered all that he hopes for ... it would not alter the conclusion that his denial of a lateral transfer was not an adverse employment decision.” Id. at 568.
II.
Title VII prohibits “discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s race ... or national origin.” 42 U.S.C. § 2000e-2(a); see also Bundy v. Jackson, 641 F.2d 934, 942 (D.C. Cir. 1981) (Title VII puts “same restrictions on federal ... agencies as it does on private employers.”). Under our Circuit precedent the action complained of must be “materially adverse” to support a discrimination claim. Ginger v. District of Columbia, 527 F.3d 1340, 1343 (D.C. Cir. 2008). At this stage, the “evidence of the [employee] is to be believed and all justifiable inferences are to be drawn in his favor.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, the employee must produce more than a “mere ... scintilla of evidence,” id. at 252, 106 S.Ct. 2505, and “[c]onclusory allegations unsupported by fact[s] ... will not create a triable issue.” Exxon Corp. v. FTC, 63 F.2d 120, 127 (D.C. Cir. 1980); see also Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999).
Ortiz-Diaz maintains that he clears the “materially adverse action” hurdle, our precedent notwithstanding. See, e.g., Stewart v. Ashcroft, 352 F.3d 422, 426 (D.C. Cir. 2003) (plaintiff “denied a lateral transfer — that is, one in which [plaintiff] suffers no diminution in pay or benefits— does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment.” (emphasis added)); Forkkio v. Powell, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002) (“Purely subjective injuries, such as dissatisfaction with a reassignment ... are not adverse actions. ... In contrast with purely subjective harms, reassignment with significantly different responsibilities ... generally indicates an adverse action.” (internal quotation marks omitted)). He so contends because, in addition to his “dissatisfaction with [the lack of] reassignment,” id. at 1130, the transfer denial tangibly injured his “career opportunities” in light of McCarty’s allegedly discriminatory conduct and his belief that his promotion outlook would be rosier “if he worked for Special Agent in Charge .;. Rene Febles (who [is] Hispanic) in [Albany],” Appellant Br. 8, 28. He also claims that there was “high profile work” in Hartford and Albany and that performance of said work would have similarly “enhanced [his] promotion opportunities.” Ortiz-Diaz Decl. ¶ 12, J.A. 611.
The desire to work for Febles (or, conversely, to escape McCarty) is irrelevant *492 under our precedent. In Forkkio the plaintiff alleged that his supervisor took many “offensive” actions, including criticizing his work product and “ma[king] personnel decisions about [the plaintiff’s] staff without consulting him.” 306 F.3d at 1130. Apparently believing that discriminatory animus motivated these actions, the plaintiff filed three complaints with the Equal Employment Opportunity Commission. Id. When the controversy reached us, we held that working under the supervisor constituted, at most, “subjective injury” and was therefore not materially adverse. Id. at 1131-32. Even granting that perhaps in an extraordinary case' having one supervisor instead of another could constitute adverse action, Ortiz-Diaz’s preference is, apparently, simply a product of Febles’s alleged freedom from “issues working with Hispanic men.” Ortiz-Diaz Decl. ¶ 12, J.A. 611. If such a declaration were sufficient to raise a jury issue, our materiality requirement would be an empty vessel indeed.[4]
Granted, a lateral transfer that increased promotion prospects might qualify, notwithstanding the “speculativeness of. the harm.” See Douglas v. Donovan, 559 F.3d 549, 552-53 (D.C. Cir. 2009). Compare id. at 553 (“failure to be recommended” for award “not categorically an adverse employment action” notwithstanding possibility of financial gain because of “inherent uncertainty” of recommendation leading to benefit), with id. at 552-53 (some actions, such as “hiring,. firing, failing to promote, [and] reassignment with significantly different responsibilities ... are conclusively presumed to be adverse employment actions, even if any alleged harm is speculative.”). But, even if so, Ortiz-Diaz offered only a bare assertion that his transfer would enhance his promotion prospects. He alleged that there was “high profile” work in Hartford and Albany, Ortiz-Diaz Decl. ¶ 12, J.A. 611, but never described it nor linked it to his promotion prospects. Whether the Washington, D.C. headquarters — whence Ortiz-Diaz was seeking transfer — also included high profile work was similarly unaddressed. Also left unexplained was why he would seek transfer to a lower pay rate, see supra n.3,[5] when in fact McCarty was talking to him about an assistant special agent in charge position.[6]
*493 In Baird v. Gotbaum, 662 F.3d 1246 (D.C. Cir. 2011), the plaintiff alleged, inter alia, that her employer’s workplace rules, including a code of civility among employees, were “terms, conditions, or privileges of employment with respect to which Title VII affords protection.” Id. at 1250 (internal quotations omitted). We upheld the dismissal of a claim premised on a violation of the code. Id. As we explained, it was “necessary for her discrimination claims” to allege that a term, condition or privilege was affected but such an allegation was “in itself ... plainly not sufficient.” Id. (emphases added). Baird “evidently suppos[ed] that anything in that category ipso facto me[t] the adverse action test,” but, as we made plain, she was wrong. Id.[7]
For the foregoing reasons, the judgment of the district court is affirmed.

So ordered.

. Ortiz-Diaz received a relocation allowance for his move to D.C. which he was required to repay in the event he did not remain in that position for at least one year (until December 15, 2010).

. The district court order reflects that this event occurred in October 2014. Further blurring the time-line, Ortiz-Diaz’s complaint indicates he requested this transfer on October 12, 2012. We believe both dates are inaccurate. Ortiz-Diaz’s complaint indicates that he left HUD altogether on January 1, 2011. Moreover, he filed his complaint in May 2012. We arrive at October 2010 because that is the date contained in an Equal Employment Opportunity Commission investigative summary and because it is consistent with the rest of the time-line.

. The district court noted Ortiz-Diaz’s claim that “it was common to maintain pay grades when transferred to the field” but concluded that he "provide[d] no evidence in support of this allegation.” Ortiz-Diaz, 75 F.Supp.3d at 566; cf. Decl. of HUD OIG Acting Assistant Inspector General of Investigations Lester Davis ¶ 3, J.A. 339 ("Senior Special Agents (GS-14) stationed with the Criminal Investigations Division who have requested reassignment to the field as a Special Agent have been required to accept a downgrade to Special Agent (GS-13)”). Ortiz-Diaz pressed the same point on appeal but again offered no supporting evidence.

. Our dissenting colleague takes issue with our analysis of the relevance of subjective injury under our precedent, noting that in Ginger v. District of Columbia, 527 F.3d 1340 (D.C. Cir. 2008), we held a change in work schedule can constitute materially adverse action. Dissent Op. 495-96. But in Ginger the plaintiffs in fact alleged "lost income as a result of the” change and, although the Court credited that a schedule change “can" suffice without monetary loss, the plaintiffs there were moved from a "permanent shift” to a "rotating shift” which "severely affected their sleep schedules and made it more difficult for them to work overtime and part-time day jobs.” Ginger, 527 F.3d at 1343-44 (emphasis added). Those difficulties are plainly not subjective.

. Our dissenting colleague submits that Ortiz-Diaz proffered evidence that McCarty approved transfer requests in some instances without a grade reduction. Dissent Op. 497-98. That observation is beside the point because the locations to which Ortiz-Diaz requested transfer did result in a grade reduction and, as we explained, Ortiz-Diaz has not contested that fact.

.Our dissenting colleague finds that Ortiz-Diaz’s declaration establishes the materially adverse action’s existence vel non, see Dissent Op. 496-97, bypassing much well-established precedent in the process. First, self-serving averments ordinarily do not allow a Title VII plaintiff to survive summary judgment. See Holcomb v. Powell, 433 F.3d 889, 899 (D.C. Cir. 2006) (rejecting "purely conclusory” allegations of discriminatory animus at summary judgment); Burke v. Gould, 286 F.3d 513, 520 (D.C. Cir. 2002) ("[B]are allegations of discrimination are insufficient to defeat a properly supported motion for summary judgment.”). More to the point, a Title VII plaintiff must produce “evidence" which "reasonable *493 minds could differ as to the import of.” Liberty Lobby, 477 U.S. at 250-51, 106 S.Ct. 2505 (emphasis added). But Ortiz-Diaz’s declaration contains no evidence regarding, inter alia, Febles's supervisory virtues, the existence of "high profile” work in Hartford and Albany or the fit, if any, between a lower-rung position and accelerated promotion prospects. Finally, setting aside the sufficiency of Ortiz-Diaz’s allegations, whether an action is materially adverse is not only a question of fact but a requisite of a Title VII claim, supported by a record of "objectively tangible harm” that is not "speculative.” Douglas, 559 F.3d at 553, 556 (emphasis added). By contrast, the dissent’s preferred authority counsels only that we "credit [Ortiz-Diaz’s] version of events," Robinson v. Pezzat, 818 F.3d 1, 8 (D.C. Cir. 2016) (emphasis added), which we have done.

. Ortiz-Diaz cites Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), as authority for his claim. Although the case involved a so-called "transfer,” its facts make plain that the transfer was not lateral. Rather, in Trans World the defendant airline required a captain to cease working in that capacity at age 60. It allowed him to remain with the airline after attaining that age, however, as a “flight engineer” — but only through a bidding procedure that did not guarantee a position. Id. at 116, 105 S.Ct. 613. A captain under 60 who was unable to retain his position was permitted to “displace automatically ... a less senior flight engineer” without participating in the bidding process, a benefit that formed the basis of an age discrimination claim. Id. (emphasis added). The Court referred to an age-disqualified captain's attempt to become a flight engineer as a "transfer request,” id. at 118, 105 S.Ct. 613, but the "transfer” was in fact a forced demotion, a far cry from our lateral transfer definition which "does not involve a demotion in form or substance,” Brown v. Brody, 199 F.3d 446, 456 (D.C. Cir. 1999).
Similarly, Ortiz-Diaz's reliance on contrary decisions of our sister circuits is misplaced. He cites Randlett v. Shalala, 118 F.3d 857 (1st Cir. 1997), for the proposition that, if "transfer ... [is] a common enough practice,” its denial is actionable under Title VII, Appellant Br. 23. The First Circuit, without explanation, concluded that, to Randlett, “transfer ... was doubtless as important as a promotion.” Randlett, 118 F.3d at 862. But Randlett held only that "refusal to transfer is [not] automatically outside Title VII,” id. (emphasis added), a position consistent with our precedent, see Stewart, 352 F.3d at 426. Ortiz-Diaz’s other cited cases, both within and without our Circuit, do not even involve transfer. See Judie v. Hamilton, 872 F.2d 919, 921-22 (9th Cir. 1989) (denial of supervisory responsibilities); • Scott-Brown v. Cohen, 220 F.Supp.2d 504, 511 (D. Md. 2002) (denial of advanced sick leave); Paquin v. Fed. Nat’l Mortg. Ass’n, 119 F.3d 23, 32 (D.C. Cir. 1997) (withdrawing proposed severance package); Passer v. Am. Chem. Soc., 935 F.2d 322, 331 (D.C. Cir. 1991) (cancelling symposium honoring plaintiff).