# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

No. 23-7085

September Term, 2023

FILED ON: MAY 17, 2024

MONICA HOCKADAY,
                APPELLANT

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,
                APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-03265)

Before: HENDERSON, KATSAS, and CHILDS, *Circuit Judges*.

## <u>JUDGMENT</u>

This appeal was considered on the briefs and the district-court record. The Court has fully considered the issues and determined that a published opinion is unwarranted. *See* Fed. R. App. P. 36; D.C. Cir. R. 36(d). It is

**ORDERED** that the judgment of the district court be **AFFIRMED**.

I

Monica Hockaday worked for the Washington Metropolitan Area Transit Authority as a police officer in the Metro Transit Police Department (MTPD) from 2002 until she retired in 2022. She was repeatedly promoted and eventually became a lieutenant.

Hockaday claims to have been subjected to a hostile environment because of her race, sex, and protected activity. Answering contention interrogatories, she asserted that eight alleged acts constituted the hostile environment:

*First*, in 2008, supervisor George Burns allowed unnamed male employees to make sexist remarks. The employees said that the MTPD did not "need any more women sergeants," and one of them joked that, if Hockaday had not returned from sick leave, he would have given her a "lap

dance." D.A. 197. The summary-judgment record contains no further evidence about these alleged comments or Burns's alleged acquiescence in them.

*Second*, in 2009, supervisor Robert Kirkpatrick gave Hockaday a "poor" evaluation. D.A. 196. The record contains neither the evaluation nor any further evidence about it.

*Third*, in 2010, future-Chief Ronald Pavlik told supervisor Brad Hanna to give Hockaday a "hard time" and make her life "difficult," though Hanna refused. D.A. 195. The record contains no further evidence of these alleged comments or any adverse actions ensuing from them.

*Fourth*, in 2013, Hockaday was reprimanded for unprofessional conduct at work. The record contains an MTPD report detailing what happened: A subordinate claimed that Hockaday herself had created a hostile environment, and supervisor Erhart Olson, investigating this claim, concluded that Hockaday's "loss of composure by yelling, flailing of arms, and slamming of books and other objects [was] not acceptable behavior by an MTPD lieutenant." D.A. 110.

*Fifth*, in January 2018, Pavlik suspended Hockaday for 24 hours for unprofessional conduct after a Montgomery County police officer stopped her car. The record contains a report by senior WMATA employee-relations officer Luis McSween, who reviewed a video of the traffic stop and concluded that the suspension had been "fairly carried out." D.A. 116.

*Sixth*, in August 2018, Hockaday was reprimanded after supervisor Peter Sepulveda concluded that she had accessed another agency's computer system without proper training. The record contains no other evidence of this incident, though it does contain MTPD reports of other reprimands that Hockaday received in 2018 or 2019 for failing to ensure that subordinates kept adequate records, for losing her police credentials, and for crashing her vehicle into a parked car.

*Seventh*, Hockaday complains that a colleague, Lieutenant Jeffrey Miller, was not disciplined for his conduct in responding to a kidnapping in 2019. The record contains no other evidence of this incident.

*Eighth*, in May 2020, Hockaday again was suspended for 24 hours, this time for mishandling evidence during an investigation. The suspension was based on a report prepared by Lieutenant Beau Perrizo. Hockaday complained to WMATA's employee-relations department. Sharon Andrews, a senior official there, conducted a "comprehensive review" of Hockaday's concerns and found that they "could not be corroborated." D.A. 162.

To further challenge this suspension, Hockaday filed a formal EEO complaint with WMATA. In this case, she complains about four later actions that she says contributed to the hostile environment and were undertaken in retaliation for her filing the complaint:

*Ninth*, in June 2020, WMATA denied Hockaday permission to take on 15 to 18 hours per week of outside employment. The denial rested on an assessment of Hockaday's work performance by supervisor Stephen Boehm, who noted a pattern of Hockaday scheduling sick leave to align with her vacation days as well as a recent suspension imposed by WMATA's Office of Professional Responsibilities and Inspections.

2

*Tenth*, in August 2020, Hockaday received a "Solid Performer" performance evaluation for the 2019–20 rating period. D.A. 170–73.

*Eleventh*, Hockaday complains about a September 2020 meeting to discuss her 2021 performance objectives. Hockaday claimed to feel "uncomfortable and bullied" when Boehm, a higher-level supervisor, showed up in addition to her immediate supervisor. D.A. 185–86. After Hockaday refused to go forward with the meeting, Boehm suspended her. One day later, the suspension was revoked, and Hockaday lost no pay from it.

*Twelfth*, Hockaday was placed on paid administrative leave pending resolution of an investigation. About two weeks later, she returned to her duties.

The district court granted summary judgment to WMATA. On the hostile-environment claim, the court noted that Hockaday's summary-judgment opposition cited only the complaint and no record evidence. The court then reasoned that Hockaday's "total failure to support her allegations with record evidence (or any real argument)" doomed her claim. D.A. 406.

Alternatively, the district court reviewed the summary-judgment evidence and held that there were no genuine disputes of material fact. The court described Hockaday's claim as "a disconnected list of grievances spanning nearly 15 years." D.A. 406. It then concluded that these various allegations, involving "at least five supervisors and various unnamed colleagues," as well as "types of slights" that "run the gamut" of workplace interactions, were not "adequately linked" into a "coherent hostile environment claim." *Id.* at 410 (cleaned up). Instead, the court explained, Hockaday had identified at most an "array of unrelated discriminatory or retaliatory acts." *Id.* (cleaned up). Furthermore, the court held that the various alleged incidents, considered individually or together, were neither severe nor pervasive enough to constitute a hostile work environment. *See id.* at 406–10. Finally, the court observed that there were "legitimate reasons" for most of the alleged actions. *Id.* at 408 (cleaned up).

On the retaliation claim, the district court concluded that none of the disputed actions was materially adverse to Hockaday. The court reasoned that denying Hockaday the opportunity to take a second job was not actionable. Moreover, there was no evidence that the 2020 performance evaluation caused Hockaday to lose pay or benefits. Nor did her placement on paid administrative leave pending an investigation. Nor did her 2020 suspension, which was "rescinded the next day" and for which she "lost no pay." D.A. 413.

II

A

On the hostile-environment claim, the district court gave four considerations supporting summary judgment: Hockaday cited no record evidence in opposing the motion for summary judgment, the disputed actions were insufficiently linked, the actions were insufficiently severe or pervasive, and there was little or no evidence of bias. The first two considerations provide ample basis for affirmance.

The district court permissibly granted summary judgment because Hockaday, in opposing summary judgment, cited no record material besides allegations in her complaint. D.A. 405–06. WMATA's motion explained how Hockaday had "failed to come forward with sufficient evidence to support a reasonable jury to find in her favor on one or more essential elements of her claim." *Grimes v. District of Columbia*, 794 F.3d 83, 93 (D.C Cir. 2015). At that point, Hockaday had the burden to "present affirmative evidence" in the record. *Durant v. District of Columbia*, 875 F.3d 685, 696 (D.C. Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)); *see* Fed. R. Civ. P. 56(c)(1)(A). For purposes of this rule, it is "well established" that a plaintiff "cannot rely on the allegations of her own complaint," but rather "must substantiate them with evidence." *Grimes*, 794 F.3d at 94. Moreover, a district court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3). And if a party "fails to properly support an assertion of fact," the court may "consider the fact undisputed for purposes of the motion." *Id.* 56(e)(2). Hockaday says nothing about these points, which are adequate to support the summary judgment.

In any event, the district court also correctly held that the constituent elements of the alleged hostile environment were not "adequately connected to each other." *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011). The "acts giving rise to a hostile work environment claim must … [be] 'part of the same unlawful employment practice.'" *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002)). This determination turns on whether the acts "involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Menoken v. Dhillon*, 975 F.3d 1, 6 (D.C. Cir. 2020) (cleaned up); *see also Baird v. Gotbaum*, 792 F.3d 166, 168–69 (D.C. Cir. 2015). As the district court explained, the acts alleged here "run the gamut" of employment practices, including sexist remarks by coworkers, reprimands, one-day suspensions, paid administrative leave, denial of outside employment, and more. D.A. 410. The incidents happened about once a year for nearly a decade and a half. And they involved many different supervisors and colleagues. The district court thus correctly held that the disputed incidents were at worst an "array of unrelated discriminatory or retaliatory acts," which might have been actionable individually but not as a hostile environment. *Id.* (quoting *Baird*, 662 F.3d at 1252).

B

The district court also properly granted summary judgment to WMATA on Hockaday's retaliation claim. Such a claim must rest on acts that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (cleaned up). "Typically, a materially adverse action … involves a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (cleaned up). The district court explained why none of the four allegedly retaliatory actions met this standard.

On appeal, Hockaday focuses entirely on the 2020 evaluation meeting and resulting suspension. To the extent she felt uncomfortable from having to confront two supervisors at once, D.A. 185–86, that was one of the "petty slights or minor annoyances" that cannot support a retaliation claim. *See Burlington N.*, 548 U.S. at 68. Moreover, the resulting suspension was

4

rescinded after one day, and Hockaday lost no pay or other benefits as a result. Hockaday objects that the suspension, even though rescinded, made her ineligible for promotions for one year. She cites General Order 241, a policy directive governing MTPD promotions and implemented in 2011. D.A. 344. Hockaday did not raise this argument before the district court, so it is forfeited. *Zevallos v. Obama*, 793 F.3d 106, 118 (D.C. Cir. 2015). In any event, the policy does not speak directly to rescinded suspensions, D.A. 348, and it was discontinued in 2014 or 2015, *see id.* at 356–57, 363. Hockaday offers no evidence suggesting that her 2020 suspension, rescinded after one day, made her ineligible for promotions under a policy that itself was rescinded some five or six years earlier.

III

For these reasons, we affirm the district court's judgment. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk