NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 20, 2012[*]
Decided August 20, 2012

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 12-1651

| | |
|---|---|
| RAVI DARBHA, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 10 C 2581 |
| CAPGEMINI AMERICA | |
| INCORPORATED, | Virginia M. Kendall, |
| *Defendant-Appellee.* | *Judge.* |

**O R D E R**

Ravi Darbha appeals from the district court's grant of summary judgment on his claims against Capgemini America Inc., his former employer, charging age, race, and national-origin discrimination, retaliation, and a hostile work environment. Because Darbha has not furnished sufficient evidence of unlawful discrimination or retaliation, we affirm.

---

[*]After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

In reviewing the district court's grant of summary judgment, we take the record and its reasonable inferences in the light most favorable to Darhba. *See Kuhn v. Goodlow*, 678 F.3d 552, 555 (7th Cir. 2012). Capgemini is an information-technology and software-outsourcing company. Darbha, who is of Indian descent, joined the company in 2004 as a software consultant specializing in the software language Java. During his time at Capgemini, Darbha worked on long-term projects for Capgemini's clients and moved from one client to the next as technology projects ended.

Two years after joining Capgemini, Darbha began working on a software project for Astellas, an Illinois pharmaceutical company. He received positive reviews from 2005 until 2008, when Capgemini found that Darbha mishandled some problems with the software applications, and it received complaints from Astellas. Capgemini rated his performance for 2008 as "needs improvement" and placed him on a performance improvement plan. In January 2009, Astellas decided to transfer information technology support for its research and development from Capgemini to another consulting firm. Capgemini and Astellas then signed a non-solicitation agreement that forbade Astellas from soliciting any Capgemini employees for one year. Capgemini told Darbha and the other employees working on this project that they needed to find new positions within Capgemini or their employment would end on May 1, 2009.

Darbha began looking for other positions within Capgemini; he had done this once before when another project he was assigned to ended. He posted his name and skills on Capgemini's internal website so that human resources and project managers could see that he was available to join a new project. But all available projects required skills with software that Darbha lacked. And Darbha was not willing to relocate to find a position for which he was qualified.

In March, a couple of months after he learned of the upcoming employment-end date, Darbha told his supervisor that he wanted to file an internal complaint about discrimination based on unfair evaluations, unfair treatment, and harassment. Several days later human resources spoke with Darbha and asked why he felt he was being discriminated against, but Darbha did not provide a reason. Human resources attempted to assist Darbha with finding another project in the organization, emailing a number of managers to see if Darbha's skills were a fit with their projects. But when a match could not be found, Darbha was terminated on May 1. Capgemini gave him a termination letter that listed "reduction-in-force" as the reason.

Two months later Darbha filed a charge of discrimination with the Equal Employment Opportunity Commission. He asserted that he suffered race, national-origin, and age discrimination, *see* 42 U.S.C. §§ 2000e-2(a)(1), 1981; 29 U.S.C. § 623(a), when he

received the negative performance review in 2008, was placed on a performance improvement plan, and was terminated. He also alleged that he was retaliated against for engaging in protected activity, 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d), namely bringing his internal complaint about discrimination. After Darbha received a right-to-sue letter from the EEOC, he sued in federal court, alleging the same bases of discrimination plus claims of harassment and a hostile work environment.

Capgemini moved for summary judgment. It argued that Darbha could not make out a case of discrimination under either the direct or indirect methods. Capgemini also maintained that no evidence suggested retaliation because Darbha's internal complaint of discrimination to Capgemini did not cause his poor performance review or termination. Finally, Capgemini contended that Darbha had not shown the severe or pervasive harassment needed to support a hostile-work-environment claim.

The district court granted the motion for summary judgment. It first noted that Darbha had not presented a case of discrimination under the direct method. And, the court continued, he could not establish a prima facie case of discrimination under the indirect method for two reasons: He failed to show that he was meeting Capgemini's legitimate job expectations, and he had no evidence that Capgemini had treated more favorably similarly situated employees of a different race, national origin, or age. Darbha also failed to make out a prima facie case of retaliation, the court added, because he complained of discrimination to Capgemini after it told him that he would be terminated if he could not find another position within the company. Thus, the court concluded, he could not show a causal connection between his internal complaint and his termination. Finally the court found that, without any evidence that Darbha's race, national origin, or age prompted his negative performance review, he had no claim of harassment or hostile work environment.

On appeal Darbha argues that he has evidence of discrimination under both the direct and indirect methods. Specifically, he contends that the timing of his first-ever poor performance review in 2008, followed by the reduction in force the next year, was suspicious and suggests discrimination. He also disagrees with the poor performance review, believing it was unlawfully motivated, and argues that it prevented him from finding other positions within Capgemini. Last, he asserts that the inconsistency in Capgemini's statements before his termination (first it criticized his poor performance, then later it cited a reduction in force) shows that the company's real reason for terminating him was unlawful discrimination.

Darbha's arguments, combined with the record evidence, are insufficient to survive summary judgment on his discrimination claims. We begin with the direct method of proof. In his deposition, Darbha conceded that he had no direct evidence that he was

discriminated against because of his age, race, or national origin. A plaintiff's concession that he lacks evidence to support his case is binding. *Best v. City of Portland*, 554 F.3d 698, 700 (7th Cir. 2009). Although circumstantial evidence may support a claim of discrimination under the direct method, *see Hanners v. Trent*, 674 F.3d 683, 691–92 (7th Cir. 2012), the only circumstantial evidence that Darbha cites is Capgemini's "suspicious" decision to reduce its labor force just a year after his poor performance review. Darbha's evidence that the poor performance review played a role in his termination is weak, but even if it did, nothing is suspicious about an employer relying on a poor performance review to decide whom to lay off during a reduction in force. *See Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 451–53 (7th Cir. 2009); *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 323 (7th Cir. 2003).

Nor has Darbha made out, under the indirect method, a prima facie case of discrimination based on his age, race, or national origin. Because Darbha contends that the poor performance review was itself discriminatory, he need not satisfy the legitimate-expectations prong of his prima facie case. *See Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 979–80 (7th Cir. 2004); *Curry v. Menard, Inc.*, 270 F.3d 473, 477–78 (7th Cir. 2001). Still, in order to make out a prima facie case, Darbha had to identify similarly situated employees outside his protected group who received more favorable treatment. *See Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389, 394 (7th Cir. 2010); *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 477 (7th Cir. 2010). It is not enough for Darbha to identify employees outside his protected class whom Capgemini retained; if these employees actually had computer skills that Darbha lacked and that Capgemini needed then they are not similarly situated. *See Lucas v. PyraMax Bank, FSB*, 539 F.3d 661, 667 (7th Cir. 2008); *Warren v. Solo Cup Co.*, 516 F.3d 627, 631 (7th Cir. 2008). That is the case here: In the district court Darbha conceded that he did not have the computer skills needed for the available projects at Capgemini, and other Capgemini employees who had been working on the Astellas project and found new positions at the company had skill sets different from Darbha's.

Darbha next argues that he put forth sufficient evidence to survive summary judgment on his claims for hostile work environment and harassment. As evidence, he cites his unfavorable performance review in 2008 and the resulting performance improvement plan. But to survive summary judgment, Darbha needs evidence of harassment so severe or pervasive that it created an abusive working environment. *See Jackson v. Cnty. of Racine*, 474 F.3d 493, 500 (7th Cir. 2007); *Wyninger*, 361 F.3d at 975. An evaluation stating that Darbha's performance needed improvement does not meet this standard. *Herron v. Daimlerchrysler Corp.*, 388 F.3d 293, 303 (7th Cir. 2004); *Speer v. Rand McNally & Co.*, 123 F.3d 658, 664 (7th Cir. 1997). Moreover, although he has alleged in his complaint and briefs that he received a negative performance review and was placed on a performance improvement plan because

of his race, national origin, or age, he has offered no evidence to substantiate the allegations, as he must. *See Jackson*, 474 F.3d at 499–500; *Wyninger*, 361 F.3d at 975.

Finally, Darbha includes in his brief a section entitled "retaliation claim." But this section is just a list of three actions that Darbha believes were unjust: placing him on a performance improvement plan, terminating him, and creating a non-solicitation agreement between Darbha and Astellas. He does not argue that these actions were retaliation for engaging in protected activity, and he has not challenged the district court's determination that he could not show a causal connection between his internal complaint to Capgemini of discrimination and these actions. It is impossible to see how he could when Capgemini placed Darbha on the performance improvement plan and notified him that he would be terminated if he could not find another project *before* Darbha ever complained of discrimination. *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 676 (7th Cir. 2011). Thus the retaliation claims fail.

Accordingly, we AFFIRM the judgment of the district court.