# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 6, 2013       Decided April 15, 2014

No. 12-5171

PATRICIA A. BROOKS,
APPELLANT

v.

SUSAN TSUI GRUNDMANN, CHAIRMAN, MERIT SYSTEMS
PROTECTION BOARD,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-00100)

*Anne King* argued the cause for appellant. With her on the briefs was *Brian Wolfman*.

*John G. Interrante*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: BROWN and SRINIVASAN, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*. In a classic (and perhaps ironic) instance of *quis custodiet ipsos custodes*, we are presented with a case where the Merit Systems Protection Board—the entity charged with addressing the grievances of federal workers challenging discriminatory employment practices, *see* 5 U.S.C. § 2301(b)(2)—is itself accused of discrimination. A Board employee claims her supervisors engendered a hostile work environment, discriminating against her on the basis of her race and sex. We conclude that, while the supervisors' actions may have been unprofessional, uncivil, and somewhat boorish, they did not constitute an adequate factual basis for the Title VII claims presented here. Accordingly, we affirm the district court's grant of summary judgment.

I

Patricia Brooks, an African-American woman, has worked at the Office of Information Resources Management (IRM) of the Merit Systems Protection Board since 1998. While we know little about her employment prior to 2005, we know she considers that particular year as the starting point of a series of unfortunate events.

Brooks' chronology of woe began when her supervisor, An-Minh (Tommy) Hwang, expressed his disappointment with her demonstration of a new document migration project by yelling at her in front of co-workers, insulting and demeaning her, and flinging a heavy notebook which Brooks thought was aimed in her direction. That incident was followed later in the year by a performance appraisal by Hwang and his deputy, Nick Ngo, which, while deeming her "Fully Successful," was highly critical of her management abilities and urged her to take a more proactive management approach. In turn, that disappointment was followed by a

dispute over a timesheet entry when Ngo accused Brooks of fudging the number of hours worked. Although a Board official intervened and Brooks received pay for the disputed hours, Brooks resented what she perceived as Ngo's selective scrutiny. Meanwhile, her performance appraisals continued their downward spiral. By 2006, she was only rated as "Minimally Successful" and was given a laundry list of needed improvements: timely filing of weekly reports, participation in leadership meetings, and improvement of interpersonal, teamwork, and communication skills.

Brooks filed her first internal EEO complaint in February 2007, claiming Hwang and Ngo had discriminated and retaliated against her. Despite regaining her "Fully Successful" rating that year, Brooks had a confrontation with another IRM Team Leader—Bill McDermott—who became visibly angry and insulted Brooks in front of other Team Leaders during a meeting. When Hwang e-mailed McDermott to discuss the latter's conduct, McDermott replied to express some contrition but circulated his response to all the other Team Leaders. Brooks informally notified the Board's EEO Director about the incident.

On January 28, 2008, Brooks filed a complaint in district court, alleging various violations of Title VII. A month later, she filed a second internal EEO complaint—once again for purported discrimination and retaliation—asserting Hwang and Ngo fostered a hostile work environment and engaged in disparate treatment. The two fired back during the course of the internal EEO investigation and expressed annoyance about Brooks' EEO activities.

In May 2008, IRM was reorganized. Brooks remained a Team Leader but had no supervisory responsibilities—a marked departure from an earlier proposed plan. She filed a

third internal EEO complaint on August 13, 2008. Several months later, Brooks received an "Unacceptable" performance rating because of her alleged unwillingness to accept responsibility for administrative mishaps and her poor communication with IRM staff. Brooks was placed on a "Performance Improvement Plan," which left her susceptible to "performance-based action, including possibly a reduction in grade or removal from the federal service," but she eventually completed the Plan without incident. J.A. at 264, 266–67.

On February 11, 2009, Brooks amended her district court complaint to allege the Board engendered a race-based, gender-based, and retaliatory hostile work environment. The Board filed what was effectively a motion for summary judgment. The district court granted the motion, determining "[n]o reasonable jury could find that [Hwang and Ngo's] conduct was so severe and pervasive as to alter the conditions of Brooks's employment." *Brooks v. Grundmann*, 851 F. Supp. 2d 1, 6 (D.D.C. 2012). Brooks appealed.

II

We review a district court's grant of summary judgment *de novo*. *Grosdidier v. Broad. Bd. of Governors*, 709 F.3d 19, 23 (D.C. Cir. 2013). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine issue of material fact exists if the evidence, 'viewed in a light most favorable to the nonmoving party,' could support a reasonable jury's verdict for the non-moving party." *Hampton v. Vilsack*, 685 F.3d 1096, 1099 (D.C. Cir. 2012) (quoting *McCready v. Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006)).

Much of Brooks' appeal is devoted to her hostile work environment claims. To prevail, she "must first show that . . . she was subjected to 'discriminatory intimidation, ridicule, and insult' that [was] 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *See Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) (per curiam) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The strength of her various claims is determined by "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *See Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008).

The deficiency in Brooks' case is her inability to demonstrate that the actions of her superiors were sufficiently severe or pervasive so as to constitute a hostile work environment. Severity and pervasiveness are complementary factors and often go hand-in-hand, but a hostile work environment claim could be satisfied with one or the other. *Ayissi-Etoh*, 712 F.3d at 579 (Kavanaugh, J., concurring) ("The test set forth by the Supreme Court is whether the alleged conduct is 'sufficiently severe *or* pervasive'—written in the disjunctive—not whether the conduct is 'sufficiently severe *and* pervasive.'"). But here, we do not have enough of either.

In discerning severity and pervasiveness, we assess the timeline of events as a whole. *See Baloch*, 550 F.3d at 1201. Each event that Brooks identifies as an example of abusive conduct fails to add materially to the alleged aura of hostility. For instance, selective enforcement of a time and attendance policy does not necessarily indicate conduct giving rise to a hostile work environment claim. *See Bhatti v. Trs. of Bos. Univ.*, 659 F.3d 64, 74 (1st Cir. 2011) (concluding the

selective enforcement of workplace rules and the failure to extend certain informal courtesies are part of conduct that is "far from severe [and] never physically threatening"). Brooks' performance reviews also do little to evince abusive conditions—they were not uniformly negative and had some legitimate bases. *See Baloch*, 550 F.3d at 1201 (noting "legitimate reasons and constructive criticism offered in . . . letters of counseling and reprimand" undercut allegations of a hostile work environment). Moreover, her reviews recommended areas of improvement—hardly the stuff of severe or pervasive workplace hostility. *See Darbha v. Capgemini Am. Inc.*, 492 F. App'x 644, 647 (7th Cir. 2012).

Brooks also suggests outbursts by a coworker and her supervisor prove she suffered a hostile work environment. We disagree. Certainly, her superiors and colleague may have been tactless and ill-mannered. But by her own admission, Brooks was of like rank and position as her colleague McDermott, and he had no supervisory authority over her. *See* J.A. at 310. Therefore, the Board cannot be deemed liable for his conduct unless Brooks "prove[s] that the employer was at least negligent in not preventing or correcting the [alleged] harassment." *See Ayissi-Etoh*, 712 F.3d at 577. Not only does Brooks fail to assert such a supervisory lapse, the record suggests her supervisor in fact met with McDermott to discuss the incident and indicated to him that his behavior was inappropriate.

That leaves the incident with Hwang. There is some dispute over what exactly occurred, but even taking the facts in the light most favorable to Brooks (as we must in reviewing a grant of summary judgment), we cannot conclude this outburst contributed much in the way of a hostile work environment. *Compare* J.A. at 208 (giving Hwang's account of the meeting in which he admits to frustration and slamming

down his hand), *with* J.A. at 224 (recounting Brooks' version of events in which Hwang "yelled at [her] and violently threw a book (thick notebook) on a table"). The incident, at its worst, was an isolated expression of frustration. That alone cannot rise to the level of severity indicating hostility or abuse. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[I]solated incidents (*unless extremely serious*) will not amount to discriminatory changes in the 'terms and conditions of employment.'" (emphasis added and citation omitted)).

While Brooks heavily relies on *Gowski v. Peake*, 682 F.3d 1299 (11th Cir. 2012) (per curiam), to make her case as to severity, that decision does little to help her cause. *Gowski* involved supervisors of a hospital facility who engaged in retaliatory acts that cumulatively amounted to a hostile work environment. These actions included but were not limited to: (1) the revocation of privileges necessary for working in critical-care units; (2) a two-week suspension based on a dubiously substantiated allegation of unprofessional behavior with a nurse; (3) the rescinding of the employees' medical committee membership; and (4) a two-year suspension from participating in research programs. *See id.* at 1305–08. To the Eleventh Circuit, these actions evinced "a workplace filled with intimidation and ridicule that was sufficiently severe and pervasive to alter [the two plaintiff-doctors'] working conditions." *Id.* at 1313.

In contrast, nothing resembling that level of malevolence is present here. Of course, the record shows the supervisors engaged in unprofessional conduct. But unlike the plaintiffs in *Gowski*, Brooks has not been shut out from her work because her privileges have been revoked and her duties eliminated; rather, she is continually assigned discrete tasks and performs them with mixed degrees of success. The facts

underlying Brooks' claims seem more like the "ordinary tribulations of the workplace," *see Faragher*, 524 U.S. at 788, a series of "petty insults, vindictive behavior, and angry recriminations" that are not actionable under Title VII, *see Bhatti*, 659 F.3d at 74. Considered in the aggregate, the episodes cited by Brooks do not sufficiently demonstrate the sort of severity or pervasiveness needed to prove a hostile work environment.[1]

III

Brooks' discrete-acts retaliation claim fares no better. Indeed, the district court ignored it altogether, and, contrary to Brooks' assertions, there was no error in the court's omission. While she urges us to pass upon the merits of her retaliation claim, the inartful and inadequate state of Brooks' pleadings prevents us from doing so.

Unlike a hostile work environment claim, which "involves repeated conduct . . . [that] occurs over a series of days or perhaps years and . . . [where] a single act of harassment may not be actionable on its own," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002), a discrete-acts claim involves a single act of discrimination "such as termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114. "[A] plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard," *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011), but a hostile work environment claim is not rendered invalid "merely because it contains discrete acts that the

---

[1] We therefore need not decide whether Brooks adequately satisfied the discrimination component of the hostile work environment analysis.

plaintiff claims (correctly or incorrectly) are actionable on their own." *Id.*

Brooks points to several discrete acts—e.g., her 2006 "Minimally Successful" rating, her 2008 "Unacceptable" rating, etc.—that ostensibly serve as the bases for her *prima facie* retaliation claims. One problem: she neglected to allege a discrete-acts retaliation claim in her complaint. *See* J.A. at 94–95. Tacitly acknowledging this inadequacy, Brooks points to various references hinting at a *prima facie* retaliation claim in her opposition to the defendant's motion for summary judgment. *See* Appellant's Br. at 43–46; *see also* J.A. at 298–302.

Her position is not entirely without support. In *Wiley v. Glassman*, 511 F.3d 151 (D.C. Cir. 2007) (per curiam), we were confronted with an instance in which a plaintiff first raised a claim of retaliatory harassment in her opposition to the defendant's motion for summary judgment. *Id.* at 159. The district court, acting on the defendant's motion, struck the claim. *See id.* We, however, determined striking the claim was inappropriate, as "[t]he factual basis for [the] appellant's 'new' claim was substantially similar to the hostile work environment claim that [the] appellant had alleged in her original complaint, and [the defendant] did not demonstrate that allowing [the] appellant's claim would cause undue prejudice." *Id.*

That could also be true here, but for two noteworthy differences. First, the obvious: unlike *Wiley*, the Board never filed a motion to strike and therefore we have no discrete procedural decision to review. *Cf. Brooks*, 851 F. Supp. 2d at 5 & n.6. But that distinction merely scratches the surface of an even greater one—the opposition to summary judgment does not clearly lay out a *prima facie* retaliation claim.

Instead of identifying "discrete episodes" that constituted adverse employment actions, *see Baird*, 662 F.3d at 1248–49, the opposition conflated the purported discrete-acts retaliation claim with a retaliatory hostile work environment claim—two distinct theories of relief, *see* J.A. at 302 ("A reasonable jury could find that these intensifications of the *hostile work environment* were in retaliation for Ms. Brooks' complaints."). Both the defendant and the district court should have had fair notice of the legal theories behind a claim, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and neither the complaint nor the opposition sufficiently conveyed the discrete-acts claim in this instance. Therefore, we decline to conclude the district court erred by disregarding the inchoate claim.

We are sympathetic to Brooks' assertion that a similar, ongoing case cast a fog of uncertainty that made her second-guess whether she could plead a discrete-acts claim simultaneously with her hostile work environment allegations. But that uncertainty does not excuse her failure to present and preserve the claim. True, the district court in *Baird v. Snowbarger*, 744 F. Supp. 2d 279 (D.D.C. 2010), did seem to suggest discrete acts could not form part of a hostile work environment claim. *See id.* at 295–96. It was not until our decision in *Baird v. Gotbaum*, 662 F.3d 1246 (D.C. Cir. 2011), that we were able to clear the air, noting the assertion of a discrete-acts claim did not bar *per se* the incorporation of such acts in a hostile work environment claim. *See id.* at 1252. Perhaps in Brooks' view, she could only rely on one theory or the other.

But Title VII cases often involve multiple, sometimes mutually exclusive, theories of relief, and nothing prevents a plaintiff from pleading in the alternative, if only for the sake of preservation. *Cf. Ponce v. Billington*, 679 F.3d 840, 845

11

(D.C. Cir. 2012) (noting the alternative nature of "but-for" and "mixed-motive" Title VII cases and discussing the strategic implications of proceeding under one or both theories). To be sure, litigants need not be clairvoyant; they are not expected to augur future legal developments with exactitude. Nor do we expect them to run into a wall of futility by asserting an expressly barred claim—to the contrary, our rules forbid it. *See generally* FED. R. CIV. P. 11(b)(2).

Here, however, there was some room to maneuver. At the time Brooks filed her complaint, nothing in *our* caselaw addressed the question of whether a plaintiff may assert *both* discrete-acts and hostile work environment claims. She was therefore free to question the wisdom of the district court decision in *Baird*. *See Johnson v. Dist. of Columbia*, 850 F. Supp. 2d 74, 79 (D.D.C. 2012) ("A District Court is comprised of individual judges who reach decisions that are not binding on any one else."); *see also Owens-Ill., Inc. v. Aetna Cas. & Sur. Co.*, 597 F. Supp. 1515, 1520 (D.D.C. 1984) ("The doctrine of *stare decisis* compels district courts to adhere to a decision of the Court of Appeals of their Circuit until such time as the Court of Appeals or the Supreme Court of the United States sees fit to overrule the decision."). Indeed, the *Baird* plaintiff successfully did so on appeal. *See Baird*, 662 F.3d at 1252.

Moreover, the law of this circuit prevents us from remanding this case to the district court so that Brooks may have an opportunity to amend her complaint in light of *Baird*'s clarification. The district court believed no discrete-acts claim was raised. *See Brooks*, 851 F. Supp. 2d at 5 n.6 ("Because Brooks does not assert that she has suffered a discriminatory or retaliatory adverse employment action, the Court need not and does not consider whether any of the

incidents described above might satisfy that element of a prima facie case."). Brooks could have asked the district court for leave to amend her complaint so that she could more clearly establish a separate theory of relief. But she failed to do so, and her failure bars us from remanding this case to give her an opportunity to fix her complaint. *Cf. City of Harper Woods Emps.' Ret. Sys. v. Olver*, 589 F.3d 1292, 1304 (D.C. Cir. 2009) ("When a plaintiff fails to seek leave from the District Court to amend its complaint, either before or after its complaint is dismissed, it forfeits the right to seek leave to amend on appeal.").

## IV

The decision of the district court is

*Affirmed.*